UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JOYCE M. ALLEN | * | CIVIL ACTION NO. 19-12117 |
| --- | --- | --- |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| HAMMOND CITY POLICE DEPARTMENT, ET AL. | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

<u>ORDER AND REASONS</u>

Before the Court is the Motion to Dismiss Plaintiff's Complaint filed by the City of Hammond (Rec. Doc. 9). For the following reasons, the Motion is GRANTED and plaintiff's Complaint is dismissed with prejudice.

Background

This is an employment discrimination lawsuit. Plaintiff Joyce M. Allen is an African-American female who worked for the Police Department of the City of Hammond ("Hammond") as a police officer for twenty-seven years. She alleges she was consistently found to be in good standing as an employee during her tenure. At the time of the facts alleged in her complaint, she was a lieutenant. In 2011, she requested additional personnel to work a DWI checkpoint, but Assistant Chief of Police Kenneth Corkern, a white male, denied her request and stripped Allen of her duties and authority during the checkpoint. Allen alleges that within a couple of days, Lt. Randy Miller, a white male, requested additional personnel at a DWI checkpoint and Corkern granted his request and did not strip Miller of his duties or authority. Allen filed an internal grievance with her department—Internal Affairs—against Corkern based on the differential treatment. Shortly thereafter, Corkern filed an Internal Affairs Complaint against Allen alleging that she was harassing and retaliating against him by filing her internal grievance. Allen maintains

1

this filing was frivolous and retaliatory. She alleges that an Internal Affairs Complaint is more serious and carries more consequences than the internal grievance that she filed and that the Complaint caused her to be investigated by the "Chief Police and Internal Affairs." Allen further alleges that Corkern also filed an internal complaint against the witnesses she used in filing her internal grievance. Then, she alleges, one month later, Corkern filed a second Internal Affairs Complaint again alleging that Allen was retaliating against him by filing an internal grievance.

Allen then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on race, gender, and retaliation. Following that filing, Allen alleges that Corkern began micro-managing her job duties by pulling telephone call review logs involving communications with Allen, even though telephone call review logs were a duty of Allen's immediate supervisor Captain Salvador Mike. Allen alleges that Corkern also began requesting multiple copies of her personnel file. She then filed an Ethics Complaint with the Attorney General's office. She alleges that the micromanagement and targeting continued for months. She had not heard anything from Human Resources about her internal grievance or from the Attorney General about her Ethics Complaint by December 31, 2012. She alleges that as a result of the actions of Corkern and the failure of Human Resources to intercede, she was forced to retire after only 27 years of service, instead of 30 years of service as intended. She alleges this adversely affected her monthly retirement income and health insurance premiums.

Allen filed her complaint in this court on August 8, 2019. She asserts claims for gender discrimination, race discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991. Although not listed as a numbered "count," in describing the nature of the action, Allen also invokes Section 1981 of the Civil Rights Act of

1866. Hammond has filed the present motion to dismiss. The parties have consented to proceed before the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c).

Law and Analysis

1. *Standard on a Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

*2. 42 U.S.C. §1981*

While 42 U.S.C. § 1981 can serve to remedy discrimination by private employers in private employment contracts, the United States Fifth Circuit Court of Appeals has held that it does not provide an independent cause of action against local government entities. Oden v. Oktibbeha Cty., Miss., 246 F.3d 458, 462–63 (5th Cir. 2001). "A plaintiff complaining of a municipality's violations of § 1981 must assert his claims via § 1983." Crawford v. City of Houston Texas, 260 F. App'x 650, 652 (5th Cir. 2007). As Hammond points out, Allen has failed to allege a claim under § 1983 and without that, cannot state a claim under §1981 against Hammond.

Hammond also argues that even if Allen's §1981 claim was actionable, it would be time barred. The Court agrees. A four-year statute of limitations applies to Allen's claims, which arise out of alleged discrimination after she began her employment. See Mitchell v. Crescent River Port Pilots Ass'n, 265 F. App'x 363, 368 (5th Cir. 2008). The limitations period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Body by Cook, Inc. v. State Farm Mut. Auto. Ins. Co., 355 F. Supp. 3d 533, 540 (E.D. La. 2018) (quoting Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001)). Hammond alleges she was constructively discharged on or about December 31, 2012, more than six years prior to the filing of this lawsuit.

In opposition, Allen concedes that she "does not oppose Defendant's motion to dismiss the Section 1981 claim."

Allen's §1981 claims are hereby dismissed.

*3. Title VII Gender and Race Discrimination Claims*

Title VII provides that

It shall be an unlawful employment practice for an employer--

> . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1). Where the plaintiff relies on circumstantial evidence of discrimination, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), applies. Id. Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). In a disparate treatment case, "to establish a prima facie case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005). If the plaintiff establishes a *prima facie* case of discrimination, "the employer must respond with a legitimate, nondiscriminatory reason for its decision." Russel, 235 F.4d at 222.

At the motion to dismiss stage, the plaintiff is not required to make a showing of each prong of the *prima facie* test for disparate treatment. Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013). Instead, the plaintiff must plead facts that tend to show that the defendant took an adverse employment action against the plaintiff because of her protected status, raising her right to relief above the speculative level. Id.

    *a. Adverse Employment Action*

An "adverse employment action" under Title VII is "an employment decision that affects the terms and conditions of employment." Thompson v. City of Waco, Texas, 764 F.3d 500, 503 (5th Cir. 2014). "[A]dverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." Id. Transfers, reassignments, or a material change in job responsibilities may qualify if they are equivalent to a

demotion. Id. at 303-05. But the Fifth Circuit "has recognized that the mere 'loss of some job responsibilities' does not constitute an adverse employment action." Id. at 504 (quoting Williams v. U.S. Dep't of Navy, 149 F. App'x 264, 269 (5th Cir. 2005)).

Hammond argues that Allen's discrimination claim must fail because she has not alleged an adverse employment action. Hammond identifies the following possible adverse employment actions from Allen's complaint: (1) her request for additional personnel to work a DWI checkpoint was denied while the request of Lt. Miller, a similarly situated white male, was granted; (2) she was stripped of her duties and authority during the DWI checkpoint while Lt. Miller was not; (3) Hammond failed and refused to respond to her complaints about actions taken by Corkern; and (4) she was forced to retire. Hammond argues that Allen has not alleged that her job duties, compensation, or benefits were affected by the refusal to grant her request for additional personnel or the stripping of her duties during the checkpoint. Hammond also argues that Allen has failed to allege that terms and conditions of her employment were affected by the alleged failure of Hammond to respond to her internal grievance. See Simmons v. Cadence Design Sys., Inc., No. CIV 305CV-1921-K BH, 2007 WL 4104373, at *9 (N.D. Tex. Nov. 16, 2007) (holding that "differential management, unwarranted job performance scrutiny, performance requirement standards, and ignoring complaints of disparate treatment, are not adverse employment actions as a matter of law because they are not 'ultimate employment decisions'").

Allen does not seem to dispute these characterizations in her opposition—in fact, as it relates to her claim of discrimination, Allen's opposition memorandum does not address the adverse employment action element at all. Allen's complaint does not allege any adverse employment action affecting the conditions of her employment that was taken because of her sex. Without this element, Allen has failed to state a claim for sex discrimination.

b. *Similarly Situated Employees*

Hammond argues that Allen's discrimination claim must also fail because at least as to her allegation that Hammond failed to respond to her internal grievance, she has not alleged that a similarly situated employee who was not a member of her protected class was treated more favorably under nearly identical circumstances. See Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000) (considering an age discrimination claim and requiring the plaintiff to show that his employer "gave preferential treatment to a younger employee under "nearly identical" circumstances").

Allen responds to this point by arguing that she has alleged a similarly situated white police officer with the same job title and duties as Allen was treated more favorably. Presumably Allen is referring to Lt. Miller whose request for additional personnel at a DWI checkpoint was allegedly granted. She does not respond to Hammond's claim that no similarly situated employee has been alleged as to the failure to respond to a grievance. Indeed, as Hammond points out, her complaint does not allege a similarly situated employee filed a grievance that was responded to differently than Allen's internal grievance. To the extent her discrimination claim is based on Hammond's response to her internal grievance, Allen has failed to state a claim.

c. *Constructive Discharge*

To establish a claim for constructive discharge, the plaintiff must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Jurgens v. E.E.O.C., 903 F.2d 386, 390 (5th Cir. 1990)

(quoting Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980)). To determine whether a reasonable employee would feel compelled to resign, courts consider:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).

Hammond argues that Allen's complaint fails to state a claim for constructive discharge. Hammond points out that Allen has not alleged that she suffered a demotion; reduction in salary, benefits, or job responsibilities as a lieutenant; reassignment to menial or degrading work; reassignment to work under a younger and less qualified supervisor; or that she received any offers of early retirement. Hammond insists that the alleged micromanagement by Corkern is insufficient to amount to "badgering, harassment, or humiliation" sufficient to state a claim for constructive discharge. Hammond cites Haley v. All. Compressor LLC, where the Fifth Circuit affirmed summary judgment in favor of the employer on constructive discharge and noted that "having one's work micromanaged may be unpleasant but does not constitute a 'greater degree of harassment than that required by a hostile environment claim.'" 391 F.3d 644, 652 (5th Cir. 2004) (quoting Brown, 237 F.3d at 566). Hammond also cites two cases that, although they did not concern constructive discharge, held that being subjected to heightened scrutiny is not an adverse or material employment action. Magiera v. City of Dallas, 389 F. App'x 433, 437 (5th Cir. 2010) (unpublished) (finding that on its face, the plaintiff's allegation that an internal affairs investigation had been conducted "with heightened scrutiny" was not a "materially adverse action[]" for purposes of her retaliation claim); Puleo v. Texana MHMR Ctr., 187 F. Supp. 3d 769, 782 (S.D. Tex. 2016) ("[A]llegations of unwarranted complaints about the quality of the plaintiff's work and

8

unnecessary job scrutiny and criticisms are not considered adverse employment actions."). Hammond further argues that plaintiff has failed to allege that Corkern's alleged scrutiny and micromanagement were connected to her gender or race, but only that these alleged actions occurred after she filed an EEOC charge and, were therefore motivated by retaliation.

In opposition, Allen cites Dediol v. Best Chevrolet, Inc., where the Fifth Circuit reversed summary judgment in favor of the defendant on plaintiff's constructive discharge claim where plaintiff had shown instances of unwelcome harassment and acrimony based on religion demonstrating a "difficult—and at times volatile—relationship" with plaintiff's supervisor that "escalated into a physical altercation in front of others" about a month after plaintiff's attempt to maintain his employment by switching departments was denied by the supervisor plaintiff sought to avoid. 655 F.3d 435, 439, 444 (5th Cir. 2011).[1] Allen argues that Hammond's actions were "particularly humiliating" because she worked in the Internal Affairs Office.

Allen has not cited any case law to challenge Hammond's argument that Corkern's alleged micromanagement of her telephone call review logs and requests for her personnel file are not the type of harassment and badgering that can establish a constructive discharge claim. Although she requests leave to amend, her opposition indicates she would merely allege that Corkern's actions were particularly humiliating. Such an allegation is insufficient to raise a plausible claim that Corkern's actions made work so difficult or unpleasant that a reasonable person in Allen's shoes would have felt compelled to resign. Moreover, Allen has failed to identify any allegations showing that the alleged micromanagement or even the filing of the Internal Affairs complaints were motivated by Allen's race or sex.

---

[1] In reply, Hammond argues that the Dediol case is distinguishable from the present case where Allen cites only micromanagement and scrutiny by Corkern and no hostile actions culminating in a physical altercation. The court agrees.

4. *Title VII Retaliation Claims*

"To establish a prima facie case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). Unlike in an anti-discrimination claim, the adverse action for purposes of a retaliation claim is not limited to "ultimate employment decisions." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 61-67 (2006). Instead, the adverse action must be one that "a reasonable employee would have found . . . materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Hammond argues that Allen has not established a *prima facie* case of retaliation because the alleged adverse actions do not rise to the level of a materially adverse employment action. Hammond identifies the following alleged retaliatory acts from Allen's complaint: the filing of Internal Affairs complaints by Corkern, being subjected to micromanagement by Corkern after she filed her internal grievance, Hammond's failure to respond to her complaints of discriminatory conduct, and being forced to retire early.

As to Corkern's alleged micromanagement, Hammond submits that Allen admits that review of her telephone call logs is a typical duty of her supervisors but merely complains that Corkern was not her immediate supervisor. Hammond cites cases holding that extra scrutiny and micromanaging were not adverse employment actions for the purpose of a retaliation claim. E.g., Stancu v. Hyatt Corp./Hyatt Regency Dallas, No. 18-11279, 2019 WL 5390629, at *4 (5th Cir. Oct. 21, 2019) (concluding that plaintiff's "complaints that he was the target of derogatory notes,

10

subjected to extra scrutiny at work, received an unfair job performance rating, and was given repeated verbal warnings" "fall well below the level of any kind of adverse employment action"); Grice v. FMC Techs. Inc., 216 F. App'x 401, 404, 407 (5th Cir. 2007) (holding that refusing to allow plaintiff to act as a step-up lead when a Lead Assembler is absent," watching plaintiff "more closely than others," wrongly accusing plaintiff of forging a signature, falsification of a report to make plaintiff look to be at fault, failure to inform plaintiff that he would be working the day shift upon returning from leave, holding safety meetings in the smoking area, and using racially derogatory terms for plaintiff in front of other employees but not in plaintiff's presence were "either unsupported by the record or so 'trivial' that they do not appear to be the sort of actions that would dissuade a reasonable employee from reporting discrimination").

Hammond also argues that Corkern's filing of an allegedly frivolous and retaliatory Internal Affairs complaint is not materially adverse. Hammond cites three cases from the Middle District of Florida holding that the initiating of an internal affairs investigation is not materially adverse. E.g., Mathis v. City of St. Augustine Beach, No. 3:13-CV-1015-J-34JRK, 2015 WL 1470762, at *21 (M.D. Fla. Mar. 31, 2015) ("Mathis cannot establish a *prima facie* case of retaliation with respect to [the police chief's] 'initiating and continuing an internal affairs investigation' because the mere initiation of an internal affairs investigation against an employee is not a 'materially adverse' action."); Cabrera v. Town of Lady Lake, Fla., No. 5:10-CV-415-OC-34PRL, 2013 WL 12092573, at *17 (M.D. Fla. Mar. 28, 2013) ("Without any evidence to show that Plaintiffs were, in fact, placed at risk or otherwise harmed in some way, the Court cannot conclude that [the Police Chief] committed an adverse employment action by initiating the internal affairs investigation or announcing the subject matter of that investigation, including the identity of the complainant."); Davis v. City of Lake City, No. 3:10-CV-1170-J-34TEM, 2013 WL

12091324, at *10 (M.D. Fla. Mar. 15, 2013) ("[Plaintiff] cannot establish a *prima facie* case of retaliation with respect to the two internal affairs (IA) investigations because the mere initiation of an internal affairs investigation against an employee is not a "materially adverse" action."). Each of the cited cases relies on an unpublished Eleventh Circuit opinion holding that being subjected to an investigation was not, by itself, a materially adverse action that would dissuade a reasonable worker from making or supporting a charge of discrimination. Rademakers v. Scott, 350 F. App'x 408, 413 (11th Cir. 2009). Hammond submits that Allen does not allege any negative effect on her job status, title, grade, seniority, hours, salary, or benefits resulting from the Internal Affairs complaint. Hammond also points out that Allen filed her EEOC charge based on race, gender, and retaliation after Corkern filed the Internal Affairs complaints in 2011. Thus, Hammond submits, Allen has essentially admitted that she was not dissuaded from filing additional complaints against Corkern. See Jones v. Jefferson Par., No. CIV.A. 12-2191, 2013 WL 6072719, at *14 (E.D. La. Nov. 18, 2013) (finding alleged retaliatory actions were not materially adverse where plaintiff actually filed a formal EEOC charge complaining of discrimination and retaliation and he suffered no loss of pay, rank, or other duties); Stephens v. City of Bastrop, No. 3:10-CV-1102, 2011 WL 5402197, at *8 (W.D. La. Nov. 3, 2011) (finding alleged retaliatory acts were not materially adverse because a supervisor following plaintiff on patrol and preventing her from reporting to court until needed for testimony were "minor annoyances," because plaintiff was not dissuaded from and instead actually did file a second EEOC charge for retaliation, and because she remained in her position and was granted her request for a lateral transfer).

Hammond further argues that Hammond's alleged failure to respond to Allen's complaints of discriminatory conduct by Corkern is not a materially adverse action. Hammond cites a Report and Recommendation issued by a magistrate judge in the Northern District of Georgia. The court

characterized plaintiff's complaint that "no one investigated her complaints and that various employees stopped responding to her complaints" as "more of a minor slight than a materially adverse action." Jacobs v. Alorica, No. 115CV00850WSDRGV, 2015 WL 13736630, at *2 n. 3 (N.D. Ga. Apr. 22, 2015), report and recommendation adopted, No. 1:15-CV-850-WSD, 2016 WL 1337315 (N.D. Ga. Mar. 31, 2016). Hammond also cites Volpe v. Connecticut Department of Mental Health & Addiction Services, where the district court in Connecticut held that "[f]ailure to act or investigate a complaint . . . does not constitute adverse employment action of a retaliatory nature" because it does not affect the terms and conditions of employment." 88 F. Supp. 3d 67, 75 (D. Conn. 2015).

Finally, Hammond argues that Allen has failed to establish that she was forced to retire as an alleged retaliatory action. Hammond again points out that Allen does not allege any demotion, reduction in salary or job responsibilities, reassignment to menial work, reassignment to work under a younger or less qualified individual, or offers of early retirement. As argued in its challenge to Allen's claim for constructive discharge on the basis of race and sex, Hammond insists that micromanagement is insufficient to support a finding of constructive discharge as retaliation.

Plaintiff's opposition addresses only the alleged retaliatory action of Corkern's filing of the Internal Affairs Complaint. She cites several cases finding that disciplinary or other investigations can constitute a materially adverse action that supports a claim for retaliation. For example, in Velikonja v. Gonzales, the plaintiff alleged "that she was subject to a lengthy investigation, that she was prevented from receiving promotions during the pendency of the investigation, and that 'the FBI has placed a cloud over [her] career, which effectively prevents her from obtaining other career-enhancing assignments for which she is highly qualified.'" 466 F.3d 122, 124 (D.C. Cir. 2006). The court of appeals reversed the district court's dismissal of this

claim, holding that "a reasonable jury could find that the prospect of such an investigation could dissuade a reasonable employee from making or supporting a charge of discrimination." Id. In Billings v. Town of Grafton, the plaintiff worked as the secretary to the Town Administrator and alleged that in retaliation for her complaints of sex discrimination, she had been investigated and reprimanded for inadvertently opening a letter from the Town Administrator's personal attorney, she had been charged with personal time for attending her deposition in the discrimination case, and she had been barred from the Selectmen's Office. 515 F.3d 39, 54 (1st Cir. 2008). The court of appeals reversed the district court's dismissal of plaintiff's retaliation claim, noting that "[w]hile these measures might not have made a dramatic impact on [plaintiff's] job, conduct need not relate to the terms or conditions of employment to give rise to a retaliation claim." Id. The court added that it found "that these actions, by their nature, 'could well dissuade a reasonable [employee] from making or supporting a charge of discrimination.'" Id. (quoting Burlington Northern, 548 U.S. at 56) (alteration in original); see Freitag v. Ayers, 468 F.3d 528, 542 (9th Cir. 2006) (rejecting defendant's assignment of error and holding that even under the Burlington Northern standard, the removal of plaintiff—a prison official—from duty in the Secure Housing Unit, referral for a psychiatric evaluation, and the initiation of several internal affairs investigations "would be considered materially adverse by a reasonable employee"); Rodriguez v. City of Laredo, No. 5:06-CV-175, 2007 WL 2329860, at *3 (S.D. Tex. Aug. 13, 2007) (holding that an employer investigation "may" amount to actionable retaliation under the Burlington framework and noting that "petty workplace incivilities must be distinguished from employer harassment achieved through the summoning of overbearing institutional power"). Allen argues that whether an action is materially adverse is determined by whether it holds a deterrent prospect of harm. She submits that the Internal Affairs complaints filed against her following her complaints of race and gender

discrimination would have a chilling effect on speech. She insists that at this stage, she has alleged a *prima facie* case of retaliation sufficient to survive a motion to dismiss.

To the extent Hammond argues that the initiation of an internal investigation can never support a claim for retaliation, the court must reject this argument. The examples cited by plaintiff show that in some cases, the potential or actual consequences of an internal investigation or the combination of an internal investigation with other retaliatory actions can be sufficient to satisfy Burlington's "materially adverse" standard. Nonetheless, in this case, the allegations of Allen's complaint are insufficient to state a claim for retaliation. Allen does not allege any actual or potential consequence of the internal affairs complaints filed by Corkern. In her opposition, she does not explain how she suffered as a result of the complaints—she says only that Corkern's actions humiliated her. It is not clear if she is referring to Corkern's alleged acts of micromanagement or the filing of the internal complaints, but in either case, the court finds it implausible that that Corkern's actions might dissuade a reasonable employee from filing a charge of discrimination especially where Allen was not actually dissuaded from filing a charge of discrimination on the basis of sex, race, and retaliation. See Jones, 2013 WL 6072719, at *14; Stephens, 2011 WL 5402197, at *8. Nor has Allen challenged Hammond's arguments that Hammond's purported failure to investigate her complaints do not amount to materially adverse actions.

5. *Punitive Damages*

Hammond argues that although Allen alleges Hammond's actions were willful and wanton and justify punitive damages, such damages are not available under Title VII or §1981. Mays v. Bd. of Commissioners Port of New Orleans, No. CIV.A. 14-1014, 2015 WL 1245683, at *10 n. 125 (E.D. La. Mar. 18, 2015) (quoting Oden v. Oktibbeha Cty., Miss., 246 F.3d 458, 465-66 (5th

Cir. 2001)) ("[Title VII] precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions.") (alterations in original); Petty v. Orleans Par. Sch. Bd., No. CIV.A. 13-6021, 2014 WL 545860, at *8 (E.D. La. Feb. 11, 2014) ("42 U.S.C. § 1981 a(b)(1) authorizes punitive damages in discrimination cases, unless the defendant is a government, government agency, or political subdivision of the state.").

In opposition, Allen argues that Hammond's malicious actions support a claim of punitive damages. Allen does not address Hammond's argument that punitive damages are not available against it as a political subdivision of the state.

The court finds no basis for an award of punitive damages against a political subdivision of the state like Hammond. Accordingly, Allen's claims for punitive damages are dismissed.

## Conclusion

For the foregoing reasons, the Motion to Dismiss is GRANTED. Allen's Complaint is hereby dismissed with prejudice.

New Orleans, Louisiana, this 28th day of January, 2020.

                                               *Janis van Meerveld*
                                              Janis van Meerveld
                                             United States Magistrate Judge